Your honors, good morning. Arnaldo Casillas on behalf of the appellant and plaintiff in the underlying action, Mr. George Hernandez. Your honors, this morning I wanted to very succinctly, I guess to the extent I can, focus on the substantive due process argument. Very frankly, I think that that is essentially the remedy that Mr. Hernandez is limited to. The case initially was pled as a Brady case because of one of the significant facts in this panoply or spectrum of facts. He failed to disclose this relationship. In looking at it, and as the case evolved, your honor, it became essentially a substantive due process case because Mr. Hernandez does not have a remedy under Brady. The fact of the matter is it didn't get to trial. And very frankly, by a fortuitous anonymous phone call, the relationship was revealed. Number two, the question of the Fourth Amendment, although I agree that there are objective facts that support the arrest, that is the law. The upshot of it is, though, your honor, in my very humble opinion, that the arrests were all related to and part of this course of conduct intended to gratify Officer Kennedy's sexual desires. Are you contesting the probable cause finding? No, your honor. The objective facts are that. That's okay. You've told me what I – I mean, you've answered my question. But a little more than that, you've been talking mainly about why you can't pursue certain claims. What is left, you would like us to decide? What is left, your honor, is the substantive due process claim. When looking at this conduct, the egregiousness of what Deputy – or excuse me, Officer Kennedy did, he undertook within a week. How do we do it? I was fully persuaded by your brief and the record of the egregiousness. It's really – it's outrageous. But there's all this law that says if something is covered by a more specific body of law, that's the one you use. So when I look at – if I take it the way a jury, I suppose, could take it, that the cop wanted to get Hernandez out of the way so he could have sex with Hernandez's wife and made a pretextual arrest and added the humiliation of a strip search just to put his thumb in Hernandez's eye, I'm still stuck with Fourth Amendment analysis and there was probable cause. I don't know how I get to the Fifth Amendment. Your honor, I think we get to the substantive due process argument by expanding what the conduct was. It wasn't just the arrest. Okay? It was the entire spectrum of conduct. Rape charge when he knew he was innocent of rape in all likelihood. Likewise. And if I may, your honor, also appearing before Judge Green and making – essentially volunteering and serving as an advocate at that point for the imposition of a $100,000 bail. I mean, Deputy – or excuse me, Mr. Tyler, Mr. Kennedy, took these absolutely unusual measures throughout the entire thing. And to look at it only as an arrest case? I don't know. It's been a long time since I got bail for a client. Does that mean Hernandez is automatically out $10,000 in order to get out of jail the next morning? Well, he has to spend it obviously once the charges were dropped. I was getting these. It was 10% of the bonds. There was the $10,000 that he had to pay essentially to get out of jail, your honor. One, two, being in prison, three, as your honor touched on, the embarrassment, the humiliation of the double kind of capricious strip search. When we look at the entire course of conduct, your honor, and I think the guide that serves as a framework for the substantive due process analysis is Sacramento v. Lewis, or Lewis v. Sacramento. The court there recognized that where there is, for example, a Fourth Amendment claim, if there is a conduct, if there is conduct that does pose that, that meets that egregiousness, then you can look to substantive due process. And one of the things that the court in Sacramento v. Lewis focused on, your honor, is the ability for the actors to deliberate. Okay? And the court in Sacramento v. Lewis focused on the facts there. You had a motorcycle chase, police officer runs somebody over, plaintiff's attorney was making the argument to substantive due process claim. The court said, well, look, we're going to analyze this under the Fourth Amendment. One, two, we're also going, it doesn't meet the egregiousness issue because it was split second. And then the court offered the alternative where it might be a substantive due process claim, referring to those cases where people are in custody, where the jailers and the processors have the opportunity to deliberate about what it is that we're doing. Here, your honor, we have a two-month course of conduct. Okay? Mr. Kennedy, from every time, and we should note this, every time that he had sex with Ms. Hernandez, she raised that question. I don't get it. You're saying we can use Lewis v. or county of Sacramento v. Lewis because it's not just the arrest, it's a two-month course of conduct. Yes, your honor. I get it. Okay. And, your honor, I, unless the court might have other questions with respect to the matter, I would submit and reserve the balance of my time for rebuttal. Can I ask a question? The two-month course of conduct, so your client was arrested once and released the same day. Yes. And he was arrested a second time. And how much time was he in jail then? The second time, it was essentially an overnight stay. He bailed out. Okay, so both times quickly. Yes. So in response to Judge Kleinfeld's question, when you talked about this two-month course of conduct, it's a lot more than just the jail stays. Yes, your honor. Okay. It is. I'm sorry. No, that's okay. Please, I'm just, I'm really grappling with this. Well, the, from the initial contact in February, I think it was March 4th of 2009, where Mr. Kennedy met Ms. Hernandez. Right. That was after the first arrest. Yes. After the first arrest. And so we can't say there was any course of conduct, including the first arrest. Well, the first arrest, your honor. Well, he was an ordinary officer, didn't know where it was sent to pick him up because the department had a complaint that he was violating an order. Well, and you're not challenging that probable cause finding. So I, why is Judge Reinhart's question, what are we missing? Well, your honor, it is, after the first arrest, which is Franklin Valley, he did not disclose the fact that he was engaging in a sexual relationship with Ms. Hernandez. Which he wasn't doing yet. But after that started, from that point. From that point forward. He didn't disclose it, and he's not in jail. He's not in jail. Except for one 24-hour period. One 24-hour period. He then appears in front of Judge Green to argue for the imposition of the $100,000 bail. And at that point he was having a, forgive me for interrupting. Yes, he was. They weren't involved in a relationship then. Yes. He didn't disclose, and he, your position is he argued to keep this person in jail, as Judge Kleinfeld said, because he wanted to continue the relationship, wanted this guy out of the way? Yes, your honor. Okay. And for the record, the first time they have sex is March 12th. The second arrest takes place on March 19th. Excuse me, March 20th. The strip search takes place on March 20th. And the sexual relationship continues through March and April. Okay, so here's my problem. During that time, there was a judicial officer who was listening to what, you know, the other evidence was, including from, forgive me, but I forget the victim's name, the woman's name. Ms. Hernandez, Evelise Hernandez. Thank you. Ms. Hernandez had made a complaint of a sexual assault, and then she made a complaint of a violation of a restraining order, or maybe I have those backwards. And those were found by a judicial officer to constitute probable cause for the, you know, whatever decision they're making to arrest, to re-arrest, to put the bail at whatever level it was. What's that got to do with Kennedy? It was, one, Mr. Kennedy who brought those facts before the court, first of all. Two, at that point, had that information been available to the court, I mean, the entire case would have been dismissed there. Had he complied with his obligation to turn this over, had he revealed? I'm not totally sure because I'm a little confused about one fact. Yes. The way I understood it is Evelise told Kennedy that Hernandez raped her, and Hernandez told Kennedy it was consensual and I can prove it. Here's a movie that shows the consensual intercourse. That's right. And then Kennedy busts Hernandez for making the movie without Evelise's consent. Yes. But at that point, in Hernandez's view of the evidence, that tends to show that he knew from the get-go that the rape charge and the assault charge was phony. And they did have children together, and the TRO let him have contact with Evelise on things relating to the children. Right. Now, what I'm confused about is it looks like there are multiple sexual contacts between Hernandez and Evelise, his common-law wife, as well as between Kennedy and Evelise, Hernandez's wife. And I thought the movie was for one sexual conduct, and maybe Evelise is saying the rape was a different or subsequent sexual encounter. Indeed, and very briefly, they did live across the street from each other. So how would he know that the second charge of rape is phony? I think by looking at the phone call that Evelise Hernandez actually made to Mr. Hernandez, essentially inviting him, and as I recall the message, it was, I've got a surprise, I'm going to satisfy you. I mean, Mr. Kennedy looking at that, and also when he heard the telephone conversation that Mr. Hernandez had with Ms. Hernandez, subsequent to that, where there is a discussion where the message is essentially, hey, look, I have a girlfriend, okay? I've always treated you right. Everybody else has treated you like trash. I have a girlfriend. You should respect that, okay? And as a seasoned sex crimes investigator, okay, looking at that scenario, Mr. Kennedy should have recognized that we have a woman that maybe has ulterior motives in accusing Mr. Hernandez of forced sex, okay? And I want to distinguish the allegation of a rape from forced sex. They lived across the street. He comes over. They engage in sex. He leaves. A few days later, after seeing the girlfriend across the street, she makes the allegation of forced sex, okay? I think that her girlfriend, not his girlfriend, right? His girlfriend. Oh, it's his girlfriend. Mr. Hernandez. Mr. Hernandez, yes. So you're right. The implication is that Ms. Hernandez was perhaps jealous or something or retaliating because he was with someone else? Indeed. Okay. Does the complaint allege substantive process violation on this theory, or does it allege the arrest and the charges were the basis of the denial of his liberty? The complaint is the allegation of, I want to say it's maybe the second cause of action. It subsumes all of the facts and alleges that those facts essentially constituted a substantive due process claim. What I did want to point out, though, Your Honor, is for the sake of clarification, when we did get to the MSJ, in my opposition to Mr. Kennedy's motion for summary judgment, I think my reference was, and I'm looking at ER 643, in that argument I point out that that deliberate course of conduct, the entire conduct, was the basis for the substantive due process. And then about three-quarters of my argument in front of Judge Cronstein, frankly, was dedicated to that substantive due process. When you talk about the two-month course of conduct, I'm trying to sort it out. Part of it looks, shall we say, unprofessional, a policeman having sex with a witness repeatedly. Yes. Part of it looks outrageous, locking up her husband, getting him out of the way, if you take it most favorably to the plaintiff, so that he can have sex without interference with the wife. Yes, sir. And part of it looks like serious abuse of authority, the same events. But it looks like they're just two discrete events where Hernandez knows what's going on and is harmed by having to be in jail, spend money to get out of jail, and suffer the humiliation. What else during the two months? Your Honor, one, as the Court noted, the repeated instances of sex with Evelise Hernandez, one. Two, I want to emphasize Mr. Kennedy's advocacy. He actually appears in court, and once the judge is about to decide the matter, he literally, as reflected in the transcript, raises his hand, Your Honor, I want to be heard, I want to be heard, and he stands up and, you know, outside of the scope of what we might consider an investigation, he is literally lobbying for that order so he could go arrest him that day and, in fact, does that day. And, again, this is. Part of the outrageous conduct is Kennedy appearing in court, even though he's not a lawyer, he's not a prosecutor. Right. I'm sorry, Your Honor. I didn't catch the initial part of your question. So part of the outrageous conduct during the two months is Kennedy arguing in court even though he's not a prosecutor or a lawyer involved in the case. Correct, Your Honor. Is that unusual for the officer with knowledge of the facts to inform the court? I don't think that's unusual, Your Honor, when there is a request, in other words, where the person is actually called as a witness and gives testimony under oath. As reflected in the transcript, that's not the case. He literally stands up and becomes an advocate. I never saw this myself. There are always prosecutors who would call the officers to the stand, just as you  So did you have to go to the district court or whatever it's called in California where they set bail? No, and it is just go in there on their own and act as though they were the prosecutors? No. In this case, Your Honor, the setting was a hearing for the revocation of probation and the district's attorney was moving to have revocation removed and a no-bail bond. Excuse me. Was it revocation of probation or was it a violation of protective order? It was a revocation of probation. He was on probation. Based on violating the protective order? Based on violation of the protective order. Okay. Thank you. And so at that hearing, as the judge is about to proceed, Mr. Kennedy interjects himself and begins to argue and state the facts and the egregiousness of the facts and, you know, her fear and how she's in danger. And your point is he does this without disclosing that he's having a relationship with her? Essentially, Your Honor. Yes. Okay. And just quickly, a minute ago, in response to Judge Kleinfeld's question, you said there are two instances. But I think in response to Judge Reinhart's question, you clarified that the first incident is the arrest and there was no relationship at that point, right? He admitted at that point. Yeah. There was no relationship at the time for the first arrest. Okay. So it's one incident, which is this advocating in court. As well as the subsequent arrest. After he advocated in court, he secured the order and he goes out and arrests them. Okay. That's what you mean by two incidents. Okay. Thank you. When he did the first arrest. Yes, Your Honor. I can't remember any more details. Was that first arrest for the rape that Hernandez said was consensual, showed the policeman the tape and played the answering machine messages before the arrest? Yes, Your Honor. It was at that point. And he was essentially given a citation and released. Technically an arrest. He was cited and released. It wasn't personal. I mean, the department got a report, a complaint, and he was the officer sent out to, I don't know, whether it was to investigate or to bring Mr. Hernandez back based on the complaint. Nothing personal about that. It could have been the other way around. Mr. Hernandez, he had been sent to arrest. The circumstances were that after the incident at home where Mr. Hernandez sees the girlfriend, I believe it's three, maybe four days later after that sexual encounter that triggers things, she reports it. And while she's there, she meets Mr. Kennedy. He interviews her for four or five hours. Mr. Kennedy then calls Mr. Hernandez. Mr. Hernandez shows up and says, look, it's consensual. We have sex all the time mutually. And in fact, I've got a video showing that we have consensual sex. You want to take a look at it? Tyler Kennedy, Mr. Kennedy then calls in Ms. Hernandez and interviews her again and says, hey, by the way, I've got this video. You should know about this. Let's watch it together. Okay. And within a few days after that, he is literally sending text messages, including a photograph of himself in a tank top. And the relationship starts there. Thank you. Good morning, Your Honor. May it please the Court. Shannon Gustafson for Defendant and Appellee Tyler Kennedy. I will be splitting my time with counsel for Wes Covina and Chief Wills. The courts have been clear that they're not going to expand substantive due process when there's this explicit textual source for the right. I think there's an exception for outrageous conduct, isn't there? Conduct that shocks the conscience if it's outside of the realm of the explicit textual source. I'm kind of wondering about this. Frankly, when I read the excerpts, what came to mind was David and Bathsheba. Now, he sends Uriah off to the front lines. Kennedy sends the husband off to jail. Both of them are getting the husband out of the way to have sex with the wife, if you read the facts as a jury might for the plaintiff. Why would one's conscience not be shocked? I mean, they were shocked 1,200 B.C., and people still haven't stopped talking about it. Well, I think the point here is that the Fourth Amendment, there's probable cause, whether you're looking at a false arrest or a malicious prosecution claim, these have to be done without probable cause. You have Judge Green coming in and saying there is probable cause. There was nothing that Kennedy said in that hearing that wasn't true. There was an allegation of rape. There was a video tape. And David had perfect right to send Uriah off to the front lines. Well, he didn't get convicted. I'm sorry? I think all in all, I might rather be in the West Covina jail. The reason that George Hernandez doesn't have a remedy here is because of the probable cause, because of the actions that he engaged in. Now, we wouldn't be in this situation had there been no probable cause, which was an objective factor. The biggest crime here was proving himself innocent by taping the sex that was consensual rather than rape. Well, the videotape actually showed sex on a different prior occasion. That was not the same date that she alleged the rape. So it had nothing to do with the rape allegation, and it did add an additional charge. So it was a different death. Yes, it was a different incident. And it predated, didn't it? Didn't it predate all of these events? The sexual encounter on the tape? Right. Didn't the tape? Here's what I'm not asking you the question. What I'm trying to ask is didn't the tape predate the time when Kennedy met Ms. Hernandez? I believe when he, the tape was made before Kennedy met Mrs. Hernandez. Right. When Mr. Hernandez and Ms. Hernandez were in a consensual relationship, and my understanding of the record is they were still living together. I don't believe they were living together at the time. All right. So is it prior to the time Kennedy started his relationship with Ms. Hernandez? The consensual sex between Ms. Hernandez and Mr. Hernandez was prior to the time that Kennedy started his relationship with her. Thank you. And the sex that's on the videotape occurred prior to the time that Ms. Hernandez and Mr. Kennedy were having the relationship. Thank you. So I think the, I mean. So all the tape really proved was at one time in the past they had nice sex together? Yes. And then. Counsel, what would it take? I'm intrigued by opposing counsel's argument. I think this is a serious uphill battle on the substantive due process front. But I'm very sympathetic to Judge Kleinfeld's view that this conduct is absolutely outrageous. What would it take for Mr. Hernandez to have a substantive due process claim here under the case law that opposing counsel is citing? What would it take for him to have a substantive due process? Right. I heard your response to Judge Kleinfeld's question, which is that he can't base it on outrageous conduct because it's not, I think, as you said, sort of outside the realm of the textual context by thinking of the Fourth Amendment. Could you go back to that, please? Because that's what I want to hear about. The standard for whether you're talking about false arrest or the malicious prosecution proceeding with the prosecution is whether it was done without probable cause. The reason Mr. Hernandez has no remedy is because there was probable cause for his arrest and for these proceedings. Now, if there would have been a situation that Kennedy was completely lying to the judge, then you have a situation where there is no probable cause, Mr. Hernandez then has a remedy. There's no need to extend substantive due process. There was no constitutional injury to Mr. Hernandez. If there was no probable cause for the arrest and no, therefore no, therefore a valid Fourth Amendment claim? If there was no probable cause, arguably no probable cause, then Mr. Hernandez would be bringing this claim under the Fourth Amendment, or he would be bringing a malicious prosecution claim. Well, that's the easy part. But now could you go to the next step, which is what Judge Kleinfeld is asking about? The case law. Is it Sacramento v. Lewis and the outrageous conduct? I believe under Sacramento v. Lewis, they found that because the Fourth Amendment applied, as it does here, that you shouldn't go to substantive due process. I mean, there's no framed constitutional injury to Mr. Hernandez. Whether the conduct was – I mean, we're looking at the conduct of Kennedy. If there is a Fourth Amendment claim, then you don't have substantive due process. So if there isn't a valid Fourth Amendment claim, then can you go to substantive due process? No, Your Honor. Otherwise, any – Either way, you can't go to substantive due process. Otherwise, you would be expanding substantive due process anytime somebody didn't have a constitutional remedy, which isn't the purpose of substantive due process. And engage in outrageous conduct. It has to go pretty far. The way Sacramento v. Lewis put it is, only the most egregious official conduct can be said to be arbitrary in the constitutional sense. They seem to allow some room for something that is egregious enough so that it can be litigated under the Fifth Amendment and not just the Fourth, even though the general rule is if it's a search or seizure, the Fourth Amendment is all you get. I don't believe that this conduct rises to the level you're going to get with substantive due process because Kennedy had a relationship he used for judgment, but all of the facts that he was telling the judge, the basis for the arrest, were all true. I mean, they were all proper allegations. Right. Which is skip the whole thing about the Fourth Amendment. And is there such a thing as a violation of substantive due process for outrageous conduct? And how do you determine that it's outrageous enough to constitute a constitutional violation? I don't think that you just, if you just make substantive due process about outrageous conduct, you could turn anything where somebody does something wrong into a substantive due process. Well, not anything. I mean, what County of Sacramento v. Lewis does is it says we're not overruled, we know the general rule and we're saying the general rule, generally searches and seizures, Fourth Amendment is all you get. But then when they get to page 717, but I've got the Supreme Court version instead of the U.S. version here. I think it's about 847 of the U.S. version. They go out of their way to preserve Rochin v. California, which said pumping somebody's stomach to get criminal evidence violates the Fifth Amendment. And the Supreme Court in County of Sacramento says that's still good law because the stomach pumping shocks the conscience and violates the decency of civilized conduct. And not every level of executive abuse of power falls under the Fifth Amendment. But when it's at that extreme, it does. That's how I read the case. Am I misreading it? I just read it fast, actually. I don't believe you're misreading the case. I don't believe that you get here in this case because there was nothing. Mr. Kennedy made a personal choice, albeit a bad personal choice, but it did not affect what was happening with the arrest and the charges. Everything that Mr. Hernandez did happened. That's why he's in the position he's in. There's some line where a bad judgment is protected by qualified immunity, and there's some line that gets crossed where this isn't bad judgment. What it is is a policeman using the power of his office to bully people and get what he wants in gross violation of their rights because he's the guy with the badge and the gun and the jailers and whatnot will do what he wants. So, counsel, when I asked, to follow up on Judge Kleinfeld's point, when I asked what would it take, I think reading between the lines, what you're telling me is you think he didn't cross the line because he didn't misrepresent the facts of the case, that is, the facts of the victim's reports to the court. Is that right? Is that what he would have to do? That's correct. I think that, I mean, there's in terms of What is what he would have to do to cross the line? He did not alter the probable cause determination. There were certain factors that established probable cause. Those were all accurate. And they're based on her report, right? Well, I mean, the videotape was, well, it's based on her report that it was inaccurate. And not based on Kennedy's report. Is that your point? Yeah, it's not based on Kennedy's. It's based on the facts as he knows them that the videotape was not consensual. Mr. Hernandez admits to violating the restraining order, and then you have her allegations of rape. Those never change. Okay, so opposing counsel's argument is that he was standing up in court, raising his hand, serving as an advocate. Do we have a transcript, or were there findings, about why the judicial officer made the order that was entered that day? The transcript doesn't specify which of the charges resulted in the order. Okay, so we don't have that. Was this substantive due process argument argued at summary judgment, the one we're talking about now? The expanded course of conduct, no, it was not. What was being argued at summary judgment was that he was arrested, strip searched, and made to stand bail. And the district court judge found that the strip search was never pled anywhere in the complaint, so that that argument could not be part of the claim, and then that the bail and the arrest were covered under the Fourth Amendment. So Sacramento v. Lewis argued at summary judgment? I believe it was discussed by plaintiff's counsel. I apologize, Your Honor. I don't want to waste way more of my time than I've earnest my position. Well, this is the – it comes down to being the critical question of whether Mr.  find so egregious that – or we would find so egregious that it's one of those things, like Roshan, that is conducted so bad that not only is it illegal, but it offends a reasonable judge if there is such a thing. I don't know that you even get there here or that there wouldn't be qualified immunity, because there was a case cited in our brief where there was a relationship between a witness and a prosecutor that was not disclosed, and it was found. But Kennedy wasn't a prosecutor. So now you're talking about qualified immunity in the context of Kennedy, not his supervisor? In the context of Kennedy, yeah. Well, not conduct of Kennedy, but you're thinking Kennedy would be entitled to qualified immunity for this conduct? Yes, Your Honor. This is pretty far outside. For not disclosing the relationship. Judges have absolute immunity, but if a judge had sex with some litigant before him, it wouldn't just result in impeachment and conviction and disbarment. It would be outside of his absolute immunity, I think, because it's not part of his job. The issue is whether or not that evidence was exculpatory that needed to be disclosed, and there was actually a case where it was a prosecutor and a witness that was found that there was no Brady violation in that context. My problem with your qualified immunity argument is, if it's conduct that was so bad that it shocked the conscience and was a Fifth Amendment violation, I think there would not be qualified immunity to engage in that conduct. So it's really the same question as whether it's the kind of conduct that is so egregious that we're willing to give them a constant – willing to find the constitutional right to complain about that conduct, even though I suspect you have to go pretty far these days to shock the conscience of a court. I don't think having the relationship itself rises to the level of shocks the conscience. But that's not what he's arguing. He's arguing failing to disclose it and advocating against this person. And throwing them in jail in order to facilitate it. I think you're still in the objective – I've already argued this, though you're still in the objective standard there when you're talking – none of the statements he made to the court were false in terms of the charges. Where's the transcript of that hearing? Could you point that part of the record out to me? I believe it's in the excerpts of record. I don't have the cite to it in front of me. I apologize. What do the well-founded charges do? I mean, suppose Kennedy really wants to get Hernandez out of the way so he can proceed with his magic triangle pursuit, I think he calls it, with Hernandez's wife. And he notices when he walks up to Hernandez's door some sort of zoning violation. And when he walks in, he sees a regulatory violation, improper extension cords. And they're just plain violations, no question about it. And then he sees an eagle feather decoration on the wall, so it's a federal felony. And all kinds of things. And they're all perfectly good legal violations that you can arrest somebody for and throw them in jail. Under Supreme Court authority, pretext does not matter to probable cause. It doesn't matter that the arrest is pretextual for purposes of the Fourth Amendment. Nevertheless, can the pretextual purpose matter for the Fifth if the conduct as a whole is like the stomach pumping where the Supreme Court says, yeah, it's a Fourth Amendment violation, but it's bad enough to be a Fifth Amendment violation? I don't believe in the context of the arrest that it can. I mean, the offender is still violating the law, and there's probable cause for that arrest, and the seizure is therefore proper. Otherwise, you're going to be questioning every arrest under pretext. There are a lot of laws out there. I sometimes wonder whether all of us aren't violating some law every day. There are a lot of them. Well, and then in the terms of a zoning context, if something you're talking about whether somebody was cited or arrested here, I mean, this conduct is much more serious. Okay. Well, we'll give it some thought. Excuse me. May it please the Court. Good morning, Your Honors. Roger Colvin, appearing on behalf of Chief Wills in the city of West Covina. I made some notes. I wanted to clear up one issue with the Court. With regard to the Judge Green probation revocation hearing, I wanted the Court to be aware that Judge Green had already issued the arrest warrant before Kennedy made any statements to the Court. It was only after Judge Green said that she was going to issue this warrant and the bail in the amount of $25,000 at that point in time is when Kennedy stood up and indicated that there was an ongoing rape investigation that he was involved in in the city of Pomona. And at that point in time, the DA, Deputy DA, wanted the bail raised to no bail, and that's when Judge Green increased it to $100,000. So there was that process first. And the first arrest was on March 19th. I believe there was maybe – I wanted to correct the record. March 19th was the first arrest for violation of the protective order because Ms. Hernandez had called the West Covina Police Department and said that – I think we understand that before the first arrest he did not know her. Right. Do you have the excerpt, counsel, for the transcript you just cited where the bail was actually increased after Officer Kennedy spoke? I don't have it handy. No, I think it's in the brief. That's okay. We have a lot of law clerks. We'll find it. There's no dispute about that point that Officer Kennedy did not know her when the first arrest occurred. No, he knew her. Of course he knew her. I thought he was just sent out as a neutral run-of-the-mill police officer to either investigate or something, but he met her after that, I thought. I mean, he met her after the complaint was filed. And there was no relationship, as I understood it. Maybe I'm wrong. On February 26th is when Ms. Hernandez alleged that she had been raped by Mr. Hernandez and that she went in on March 4th, I believe, and made the accusation. And that's when Kennedy was assigned to the case. Yes. And then the arrest didn't come until March 19th and March 20th. Okay. At the time of the first arrest. Right. Had Kennedy started his relationship with Ms. Hernandez? Yes. Before the first arrest? Before March 19th. He was having sex with her before he arrested Hernandez. Right. The first time. Right. But the arrest for the first, the first arrest was for violation of the protective orders. I believe counsel might have indicated otherwise. And the second arrest was based upon Judge Green's issuance of an arrest warrant on March 20th. Does the complaint allege that Kennedy encouraged Ms. Hernandez to make those reports or that her reports were false? Does the plaintiff's complaint allege that? Right. I don't recall that being alleged in the complaint. Thank you. With regard to Chief Wills, I guess the major issue here has to do with supervisory responsibility and this negligence claim, which sort of go hand in hand. As the court is aware from reading the briefs, this Magic Triangle book that was brought up earlier was first given to Chief Wills in 2006. Excuse me one second. Just to ask counsel, you said that some of the counts were not pursuing and it was really the substantive due process. Are you still pursuing the counts against the city and the chief? Yes. And the chief? Thank you. Okay. Go ahead. Okay. 2006 is when this Magic Triangle book was, or whatever you want to call it, was handed to Chief Wills by one of his commanders, three years before any instances involved in this case. And it should be pointed out that in 2006 when the Chief Wills received this book, there had been no outstanding allegations against Kennedy. He had no allegations against him for misconduct or sexual, having sexual relations with sex crime victims. Chief Wills read it, found out that it was a book that was self-published, that was done, it was written by Kennedy on his own time and had nothing to do with police work, law enforcement work. He read it, leafed through it, as he said, made sure there wasn't any reference to law enforcement and so forth, and that was it. At that point in time, three years later, is when all these incidences occur. So with regard to Chief Wills, the real critical question to me was, well, should he have done something when he read, which I'm sure he would have asked me, when he read the book, and my answer to that would be clearly no. And the reason why I say that is this. Kennedy had a First Amendment right to write any type of book that he wanted to write. Kennedy didn't bring the book to the police station. The book was not disseminated to anyone at the police station. And to argue otherwise, I could see a situation where if the chief went to Kennedy and said, I want to talk to you about this, I want to know why you wrote something like this, Kennedy could very easily, in my opinion, go to the police union and say, I didn't bring this book to the police station, it has nothing to do with police work, I wrote it on my own time, and now, in my opinion, you have the slippery slope of a First Amendment right versus a book that was just handed to the chief three years earlier. There's an allegation in the briefing that we have that there were two other incidents, although I think by just one other officer earlier on, who somehow thought it was appropriate to have a sexual relationship with a sexual assault victim. And my question is, how many years earlier was that? The briefing talks about two incidents in 30 years, but how close in time were they? I think it was 2007 or 2008. And these allegations are, forgive me, what year? Pardon? Kennedy's allegations occurred in what year? 2009. So it was a couple of years earlier. Right. Where there was not another officer who had engaged in this conduct. Accused of conduct, that there was accusations of misconduct. There wasn't any finding or hearing or anything like that. It was simply accusations. Thank you. When you say there were accusations against another officer, actually a year earlier, I think it was 2007 or 2008 as opposed to 2009, when there were those accusations and you say there was no hearing, you mean nothing happened? He wasn't cleared or convicted or anything? Were they just ignored, those accusations? No. The accusations were made. I'm not quite sure if there was, there might have been an administrative investigation on an internal affairs, but I don't know how the outcome of that, I can't represent to the court, I don't know. There was also a 2010 allegation that happened after the Kennedy incident with a Hector Gray, but those, again, were accusations. There wasn't any finding that I'm aware of. Well, of course, the other side's argument is that there were such incidents or allegations and the department just ignored them. You don't know the answer to what the department did. There was nothing that was brought out in the discovery or in the complaint or anything about the ignoring of the incident. I can't say with 100% certainty that there was an administrative investigation, but nothing ever resulted from it. I'm not saying the department turned a blind eye or anything. It was brought out, it was brought forth in discovery. Well, counsel, this is a summary judgment, of course, and if there's now perhaps maybe four other incidents, and his argument is that there's perhaps a custom, a policy, at least a tolerance, why isn't that enough to survive summary judgment? Well, because I believe the case law in Monell stands for the proposition there has to be a longstanding policy customer practice that was well settled pertaining to this issue. Numbers would bear on that. I have no idea. I don't know, California, is this four cops out of ten on the force or four cops out of 10,000 on the force? I have no idea. Well, to answer your question this way, first of all, there were two incidences within 30 years involving accusations. Well, but in two years. Two within two years. You could say four within four years, right? Sure. You could count Kennedy as one, and then a 2010 incident. Maybe the culture was really different 19 decades ago, but if you've got an incident popping up every year with some cop the last few years, that raises the question of should the police force have some more procedures in play if there are very few cops and a high percentage of them are involved in these allegations. On the other hand, you deal with criminals. A lot of them make false allegations. And if it's just a very few policemen out of a very large number, probably it's not cause for doing anything about it. I have no idea what the number is. Well, I believe. How many policemen are there? I'm sorry? How many policemen are there? I think there's sworn officers or somewhere 60 or 70 officers. 60 or 70 police officers? Yes. Even back then I think it was the same amount. And this is the West Covina? West Covina Police Department. But getting back to my point. It isn't like every cop on the force gets accused of these six things. It's four in four years out of 60 or 70. Correct. Counsel, was this Officer Kennedy in a particular unit that responded to sexual assault crimes? He was a detective assigned to sex assault cases. How many officers do they have that do that? How big is that unit or division? Back then I don't know the answer to that. I'm sorry. But I think it's somewhere around four or five. Do you know whether the others who were accused of sex offenses? The other officers? Were there three out of the other four or whatever? As far as I know, there have been no allegations on those officers. Okay. All right. Anything further? No, thank you. Thank you very much. Thank you. Counsel, forgive me for jumping in, but my question is whether or not at summary judgment you argued this County of Sacramento Fifth Amendment subject to process issue. I did. Uh-huh. And I don't have the finale on it. Sure. I should defer to you. You're the boss. Your Honor, my argument begins at E.R. on the issue of the subject to process claim begins at E.R. 945. Uh-huh. And. Is that your opposition or is that your brief on summary judgment? That is actually my argument before the court, before the trial court judge. The transcript. Yes, the transcript. Okay. Right. And, Your Honor, the court also. Summary judgment argument? Yes, Your Honor. And I, in fact, during that argument, argued and cited the Sacramento v. Lewis judge, Constant, the trial judge, the district court judge, excuse me, specifically asked me for authority, and I cited the Sacramento v. Lewis case. One, Your Honor, with respect to the transcript at the bail hearing where Mr. Kennedy appeared, that's at E.R. 322. That's where Judge Green increased the bail? Yes, Your Honor. And I would correct. Excuse me, E.R. 322? Yes, 322. Okay. E.R. 322, Your Honor. And I would note that in Mr. Colvin's reading of the circumstances there, I, I, I, I, I differ, frankly, with his, his. Well, the fact is he, he, your opponent here suggested that when the officer said there was another rape charge pending or there was an accusation being filed, the district attorney then got up and asked if the bail be raised. And then the officer got up. Is that the order? The transcript reveals it? That's sort of the discussion. And, and, again, at excerpt of record 322, if I may, Your Honor, just very briefly read it. The, the court, in the matter of George Manuel Hernandez, that's 8JB01533, the court has received a motion requesting revocation of probation in lieu of filing, therefore, having reviewed and considered the motion and the attached police report, the court hereby revokes probation and issues a warrant in the amount of $25,000. Ms. Smith, the district attorney. Your Honor, did you say this is in lieu of the court? Yes, it's not on calendar. Ms. Smith, okay, because we have in our file that this is not in lieu of filing. The court, oh, okay, it is a motion revocation, period. The district attorney, Ms. Smith. Yes, Your Honor. And the people are asking for the court to issue a warrant, a no bail warrant. The court, really? I don't see that. Detective Kennedy. May I speak, Your Honor? The court, you may. Could you identify yourself, please? Detective Kennedy. My name is Detective Kennedy with the West Covina Police Department. And then he launches into his advocacy. And, Your Honor, with respect to the innocuousness of the book, you know, that Chief Wills was presented with the book by one of his supervising officers, you know, that he browsed through the book. My issue, and I think what it shows, frankly, is a tacit kind of ratification of an attitude. I have trouble with that. I skimmed through the book myself to see what you're talking about. And it seemed like kind of a silly book. Mostly it says, if you want to get sex, you should agree with the woman whatever she says, and you should do whatever she wants no matter how foolish. And that's the whole book. And it goes on forever saying that. And I couldn't see why it wouldn't be protected by the First Amendment. And I couldn't see he never says he's a policeman and he doesn't talk about law enforcement. He just talks about how to get sex. And that's his argument for how to get sex. And the last thing I would do is deny Mr. Kennedy's First Amendment rights to publish the book. I think where it's important factually in the determination of whether there's a constitutional violation or maybe a ratification of kind of a, for lack of a better kind of phrasing, a locker room kind of attitude about things. I never know quite what some of these bumper sticker phrases like locker room mean. He didn't use vulgar language in the book. He didn't use vulgar language. I think, though, Your Honor, a fair reading of the book suggests that, you know, frankly, it is tongue-in-cheek. It's just silly. It's like one of those advice columns for teenagers. Your Honor, that's true, but I think for a sex crime investigator to publish that book. Let me offer this, Your Honor. Is it important because it shows a really disparaging and disrespectful attitude towards women? Precisely, Your Honor. And the example is, I mean, if you were to have written a book that is supportive of the Ku Klux Klan, I would look at that and certainly is entitled to it. Oh, so your theory is because the book says women are irrational in a lot of ways, that means the chief should have taken them off sex crimes. I think that's right. Now I understand. And that's frankly the point there, Your Honor. The book, I think, should have triggered a very close review of Mr. Kennedy, and I think by that point, especially when the, I forget her name, there was another woman that complained about him before. I believe her name was Ms. Zaria, Z-O-R-I-L-A. At that point, combining that with the book, I think the chief had an ample, ample opportunity to say, my gosh, there's something wrong here. Just one more question. Did Ms. Zaria, if that was her name, complain about Officer Kennedy or about the other officer? Officer Kennedy. Did the chief know that? Does the record tell us whether the chief knew that? I don't think it does, Your Honor. I took the chief's deposition, and I think the response was that that was a personnel matter and he couldn't comment. I see. As I recall. I see. Thank you, Your Honor. Thank you. The case that's argued will be submitted. The Court will stand in recess today.
judges: Reinhardt, Kleinfeld, Christen